Ja'quan Dixon, etc.

v.

South Boston Corp. et al.

September 19, 2005

Case No. LS-2524

By Judge T. J. Markow

On September 9, 2005, the court heard argument and received evidence on Homes 'N Land, Inc.'s and W. C. Hutchinson Real Estate, Inc.'s Special Pleas of Immunity. Thereafter, the court took the issue under advisement.

Plaintiff in this matter is suing the owners and leasing agents of two separate rental properties for his alleged lead poisoning. In March 2001, while living at 3033 Grayland Avenue, Plaintiff was diagnosed with lead poisoning. The Grayland property is owned by defendants, Alvin and Rosie Wilkins, and W. C. Hutchinson Real Estate, Inc., is their leasing agent for the property. Subsequent to Plaintiff's diagnosis, he moved to 2210 Parkwood Avenue. The Parkwood property is owned by South Boston Corporation, and Homes 'N Land, Inc., is its leasing agent.

Both Homes 'N Land and W. C. Hutchinson contend that they adequately complied with all statutory obligations and, as agents, are entitled to statutory immunity under Virginia Code § 8.01-226.7.

The immunity statute provides:

A. As used in this section, the following definitions apply:

"Agent" means any party who enters into a contract with a seller or lessor, including any party who enters into a contract with a representative of the seller or lessor, for the purpose of selling or leasing a residential dwelling. . . .

B. *Any agent* who has complied with the requirements of the United States Residential Lead-Based Paint Hazard Reduction Act of 1992 (42 U.S.C. 4851 *et seq.*) shall not be liable for civil damages in any personal injury or wrongful death action for lead poisoning arising from the condition of a residential dwelling, provided that, before the purchaser or tenant signs any contract to purchase or lease the residential dwelling:

1. An EPA-approved lead hazard information pamphlet was provided to the purchaser or lessee;

2. Any *known* lead-based paint and lead-based paint hazard on the property and any additional information or *reports* available to the owner *concerning the same* were provided to the purchaser or lessee;

3. The purchaser or tenant signed a written statement acknowledging the disclosure and receipt of the literature; and

4. If the agent is a public housing authority, it has complied with all applicable federal laws and regulations.

However, if the agent *performs or agrees to perform lead-based paint maintenance* on the residential dwelling or if the party, a purchaser, or a lessee is instructed to contract for lead-based paint repairs, the agent shall not be entitled to immunity unless the agent has also met the requirements of subsection C of this section.

C. An owner of a residential dwelling, or *agent responsible for the maintenance* of a residential dwelling, who has complied

with the requirements of the United States Residential Lead-Based Paint Hazard Reduction Act of 1992 (42 U.S.C. 4851 *et seq.*) shall not be liable for civil damages in a personal injury or wrongful death action for lead poisoning arising from the condition of the residential dwelling, *provided that, before the purchaser or tenant signs any contract to purchase or lease* the residential dwelling:

1. An EPA-approved lead hazard information pamphlet was provided to the purchaser or lessee;

2. Any *known* lead-based paint and lead-based paint hazard on the property and *any additional information* or reports available to the owner concerning the same were provided to the purchaser or lessee;

3. The purchaser or tenant signed a written statement acknowledging the disclosure and receipt of the literature; and

4. With regards to lead-based paint and lead-based paint hazards, the residential dwelling was *maintained in a fit and habitable condition and in compliance with the state laws and regulations,* including but not limited to the Uniform Statewide Building Code, *and applicable federal laws and regulations.*

Va. Code § 8.01-226 (2005) (emphasis added).

The parties disagree on the interpretation of the immunity statute. Defendants argue that the General Assembly intended that the phrase "agent responsible for the maintenance of a residential dwelling," contained in paragraph C, mean an agent who "perform[s] lead-based paint maintenance." Defendants suggests that paragraph C is merely an extension of the last sentence in paragraph B, and, therefore, paragraph C is constrained to only those agents who perform maintenance regarding lead-based paint. Such an interpretation would mean that regardless of general maintenance duties, only agents responsible for lead-based paint maintenance and repairs must comply with paragraph C.

Plaintiff, however, contends that paragraphs B and C are separate and independent. Plaintiff argues that any agent, which is defined as "any party who enters into a contract with a seller or lessor . . . for the purpose of selling or leasing a residential dwelling," regardless of maintenance duties, must

comply with paragraph B, and that any agent, who is responsible for "the maintenance," of the property must also comply with paragraph C. Plaintiff further argues that the purpose of the last sentence in paragraph B is to require those agents who are solely responsible for lead-based paint maintenance, but not general maintenance, also to comply with paragraph C.

The court agrees with Plaintiff. The court finds that the legislature intended paragraph C to be its own separate directive and not a subparagraph of paragraph B. The court interprets paragraph C to require any agent responsible for "the maintenance," meaning general maintenance, of the property to comply with paragraph C. Accordingly, any agent responsible for "the maintenance" of the property will not be liable if it complied with 42 U.S.C. § 4851 *et seq.*, and before the signing of the lease it provided the appropriate disclosures contained in subparagraphs 1-3 and maintained the residence in a fit and habitable condition and in compliance with state and federal laws and regulations regarding lead-based paint and lead-based paint hazards.

Because of the factual differences regarding each defendant, the court will address each one separately.

### Homes 'N Land

With regards to Homes 'N Land, it is undisputed that there was no known lead-based paint or lead-based paint hazard at the property at the time the lease was signed. It is also undisputed that all statutory disclosure requirements were complied with at the time the lease was signed. There are, however, two major disputes between the parties: first, whether Homes 'N Land was responsible for "the maintenance" of the Parkwood property and thereby subject to paragraph C; and second, whether the federal regulations apply with regards to immunity, and, if so, whether Homes 'N Land had knowledge they were required to disclose upon automatic renewal of the lease.

### A. Maintenance

Based on the court's interpretation of the immunity statute as discussed above and all the evidence presented, including, but not limited to, the agreement dated February 7, 1997, between Homes 'N Land and South Boston Corp., the court finds that Homes 'N Land was responsible for "the maintenance" of the Parkwood property, and, therefore, in order to be entitled to immunity, Homes 'N Land must comply with the requirements of

paragraph C of the immunity statute. Whether the Parkwood property "was maintained in a fit and habitable condition" and in compliance with the state and federal laws and regulations is a factual determination to be submitted to a jury. For this reason, the court cannot find that Homes 'N Land is entitled to the immunity provided by Virginia Code § 8.01-226.

## B. Disclosure

The second issue in dispute was whether Homes 'N Land was required to supplement its disclosures and, if so, whether any "lead-based paint [or] lead-based paint hazard on the property [or] any additional information or reports available" were "known."

Plaintiff argues that federal regulation 40 C.F.R. § 745.101(d) required Homes 'N Land to disclose information they received in April of 2003 at least at the time of the July 2003 and July 2004 lease renewals.

Homes 'N Land argues that the federal regulations do not apply for the purpose of determining immunity because the regulations are not specifically noted in the language of the immunity statute.

The court agrees with Homes 'N Land in that the federal regulations do not apply for the purpose of determining immunity, but not for the reason cited. The federal regulation does not apply for purposes of immunity because the immunity statute specifically states that an entity is immune if it performed the requirements enumerated "before the purchaser or tenant signs any contract to purchase or lease the residential dwelling." As long as the agent complied with the immunity statute directives at the inception of the lease, it is immune. Accordingly, whether or not Homes 'N Land was in possession of "any known lead-based paint and lead-based paint hazard on the property and any additional information or reports available to the owner" or whether or not it was generally required to disclose this information pursuant to the federal regulations is irrelevant because Homes 'N Land would not be denied immunity on this basis.

Because there is a factual question regarding whether Homes 'N Land complied with subparagraph (C)(4) of the immunity statute, the court must overrule Homes 'N Land's Plea of Immunity.

## W. C. Hutchinson

With regards to W. C. Hutchinson, the parties disagree on two issues: first, whether W. C. Hutchinson was responsible for maintenance and, if so, which paragraph of the immunity statute applies; and second,

whether the disclosures made at the signing of the lease were in compliance with the immunity statute.

## A. Maintenance

Based on the court's interpretation of the immunity statute as discussed above and all the evidence presented, including, but not limited to, the Dwelling Lease dated January 27, 1998, between Alvin and Rosie Wilkins ("Lessor"), Mary M. Dixon and Herbert H. Dixon ("Lessee"), and W. C. Hutchinson ("Agent"), the court finds that Lessor, and not W. C. Hutchinson, was responsible for "the maintenance" of the Grayland property. Additionally, no evidence was presented that W. C. Hutchinson performed any lead-based paint maintenance. Therefore, in order for W. C. Hutchinson to be entitled to immunity, it must only comply with the requirements of paragraph B of the immunity statute.

## B. Disclosure

In order to be entitled to immunity, W. C. Hutchinson must have complied with the requirements of Virginia Code § 8.01-226.7(B). The only issue in dispute is whether W. C. Hutchinson was required to provide Plaintiff with the Official Notices of Violation contained in its file, in addition to the Compliance Letter and the Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards form, which was provided to Plaintiff.

The Official Notices of Violation were issued in August of 1995 and April of 1996. A Compliance Letter was issued by the City of Richmond on July 18, 1997, stating that "the previously cited lead hazards were found to be satisfactorily corrected" and that an annual compliance re-inspection would occur. Plaintiff received a copy of this Compliance Letter as well as a Disclosure of Information form which noted that "known lead-based paint and/or paint hazards are present in the housing" and that a "copy of lead removal compliance dated 7/18/97 [was] attached."

The relevant portion of the statute provides that, before the tenant signs the lease, the agent must provide to the lessee "any known lead-based paint and lead-based paint hazard on the property and any additional information or reports available to the owner concerning the same."

Plaintiff contends that the plain language of the statute required W. C. Hutchinson to disclose the Official Notices of Violation. W. C.

Hutchinson, however, argues that paragraph (B)(2) of the immunity statute only requires that the agent disclose "any *known* lead-based paint and lead-based paint hazard on the property and any . . . reports available to the owner *concerning the same*" and that, because there were no known, existing hazards on the property, no additional disclosures were required. Defendant further argues that, because there was no knowledge of an existing hazard, due to the correction of the prior violations, W. C. Hutchinson actually went above and beyond the required disclosures by providing Plaintiff with a copy of the Compliance Letter, which referenced the prior violations and put Plaintiff on notice.

The court finds that, since W. C. Hutchinson admitted on the Disclosure of Information form, "known lead-based paint and/or lead based paint hazards are present in the housing," it cannot now claim that there were no "known" hazards. However, the court finds that, by providing the Plaintiff with the Compliance Letter and the Disclosure of Information form, which noted the existence of lead-based paint and lead-based paint hazards in the housing, W. C. Hutchinson sufficiently complied with Va. Code § 8.01-226.7(B)(2). Accordingly, the court finds that W. C. Hutchinson satisfied the requirements of Va. Code § 8.01-226.7 and, therefore, is entitled to immunity. The court will sustain W. C. Hutchinson's Special Plea of Immunity.

It is therefore ordered that Homes 'N Land's Special Plea of Immunity is overruled and W. C. Hutchinson's Special Plea of Immunity is sustained. The case against W. C. Hutchinson Real Estate, Inc., is dismissed.